UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| TERRY D. DIXON,<br><br>　　　　　　　　　Petitioner,<br>　v.<br>RENEE BAKER, et al.,<br><br>　　　　　　　　　Respondents. | Case No. 3:13-cv-00248-RCJ-CSD<br><br>Order Granting Motion to Dismiss in Part (ECF No. 71) and Denying Motion for Evidentiary Hearing (ECF No. 90) |

Respondents have moved to dismiss Terry Dixon's 28 U.S.C. § 2254 petition for a writ of habeas corpus. (ECF No. 71.) Dixon opposes the motion and has moved for an evidentiary hearing. (ECF Nos. 89, 90.) The court concludes that several grounds are procedurally barred, and therefore, grants the motion to dismiss in part. The motion for evidentiary hearing is denied as to actual innocence; it is denied without prejudice as to *Martinez* and cause and prejudice.

**I.      Background**

A jury convicted Dixon of four counts of attempted murder, resisting a police officer, several counts related to discharging a firearm, and being an ex-felon in possession. (Exhs. 47, 48.)[1] The convictions arose from an incident where Dixon, allegedly in a drug and alcohol-fueled psychosis, pulled a gun on his mother in their apartment. (ECF No. 61, pp. 4-6.) She called police. Two officers heard shots fired from inside the apartment. When they could not kick down the door, the officers turned to go

---

[1] Exhibits referenced in this order are exhibits to respondents' response to the motion for discovery, ECF No. 65, and respondents' motion to dismiss, ECF No. 71, and are found at ECF Nos. 66, 72-87.

1

downstairs. Some shots came from behind the closed door; one hit one officer and caused him to accidently fire his own gun, hitting the other officer. Ultimately about 300 police officers responded and surrounded the building. Dixon was firing out of the apartment window, and six officers were wounded or in the close line of fire.

The state district court sentenced Dixon to four consecutive terms of life without the possibility of parole for the attempted murder charges and additional terms of years for the other counts. (Exh. 52.) Dixon was acquitted of one count of attempted murder for the officer who was hit through the door. Judgment of conviction was filed on April 7, 2009. (*Id.*)

The Nevada Supreme Court affirmed Dixon's convictions in March 2011 and affirmed the denial of his first state postconviction habeas corpus petition in April 2013. (Exhs. 81, 1.) Dixon then dispatched his original federal petition for mailing in May 2013. (ECF No. 5.) In July 2014, this court dismissed his amended petition without prejudice under prevailing law at the time for failure to exhaust certain claims. (ECF No. 19.) The court also denied Dixon's motion for stay and abeyance in that order. Judgment was entered. (ECF No. 20.)

Dixon filed a notice of appeal, the Ninth Circuit Court of Appeals appointed counsel. (*See* ECF Nos. 21, 30.) In February 2017, the court of appeals reversed and remanded with instructions that this court grant Dixon's motion for a stay and abeyance while he pursues his unexhausted claims in state court. (*See* ECF Nos. 34, 39.)

The Nevada Court of Appeals then affirmed the denial of his second state postconviction petition in May 2017. (Exh. 2.) In September 2020, the state appeals court affirmed the denial of Dixon's third state postconviction petition. (Exh. 3.)

This court granted Dixon's motion to reopen his federal petition, filed through counsel, the Federal Public Defender, in January 2021. (ECF Nos. 54, 56.) Dixon filed a second-amended petition and a motion for discovery. (ECF Nos. 61, 62.) The court denied the motion for discovery. (ECF No. 100.) Respondents have moved to dismiss

certain grounds in Dixon's second-amended petition as procedurally defaulted. (ECF No. 71.) Dixon opposed, arguing that he is actually innocent, and respondents replied. (ECF Nos. 89, 107.) Dixon has also filed a motion for an evidentiary hearing. (ECF No. 90.) Respondents opposed, and Dixon replied. (ECF Nos. 106, 108.)

## II.   Motion to Dismiss

### a.   Legal Standards & Analysis -- Procedural Default

Respondents argue that several grounds are procedurally defaulted. 28 U.S.C. § 2254(d) provides that this court may grant habeas relief if the relevant state court decision was either: (1) contrary to clearly established federal law, as determined by the Supreme Court; or (2) involved an unreasonable application of clearly established federal law as determined by the Supreme Court.

"Procedural default" refers to the situation where a petitioner in fact presented a claim to the state courts, but the state courts disposed of the claim on procedural grounds, instead of on the merits. *Coleman v. Thompson*, 501 U.S. 722, 730-31 (1991). A federal court will not review a claim for habeas corpus relief if the decision of the state court regarding that claim rested on a state law ground that is independent of the federal question and adequate to support the judgment. *Id*.

The *Coleman* Court explained the effect of a procedural default:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman*, 501 U.S. at 750; *see also Murray v. Carrier*, 477 U.S. 478, 485 (1986). The procedural default doctrine ensures that the state's interest in correcting its own mistakes is respected in all federal habeas cases. *See Koerner v. Grigas*, 328 F.3d 1039, 1046 (9th Cir. 2003).

3

To demonstrate cause for a procedural default, the petitioner must be able to "show that some objective factor external to the defense impeded" his efforts to comply with the state procedural rule. *Murray*, 477 U.S. at 488 (emphasis added). For cause to exist, the external impediment must have prevented the petitioner from raising the claim. *See McCleskey v. Zant*, 499 U.S. 467, 497 (1991).

The Court in *Coleman* held that ineffective assistance of counsel in postconviction proceedings does not establish cause for the procedural default of a claim. 501 U.S. at 750. However, in *Martinez v. Ryan*, the Court subsequently held that the failure of a court to appoint counsel, or the ineffective assistance of counsel in a state postconviction proceeding, may establish cause to overcome a procedural default in specific circumstances. 566 U.S. 1 (2012). The Court explained that *Martinez* established a "narrow exception" to the *Coleman* rule:

> Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.

566 U.S. at 17.

In *Clabourne v. Ryan*, 745 F.3d 362 (9th Cir. 2014), the Ninth Circuit provided guidelines for applying *Martinez*, summarizing the analysis as follows:

> To demonstrate cause and prejudice sufficient to excuse the procedural default, therefore, *Martinez* . . . require[s] that Clabourne make two showings. First, to establish "cause," he must establish that his counsel in the state postconviction proceeding was ineffective under the standards of *Strickland* [*v. Washington*, 466 U.S. 668 (1984)]. *Strickland*, in turn, requires him to establish that both (a) post-conviction counsel's performance was deficient, and (b) there was a reasonable probability that, absent the deficient performance, the result of the post-conviction proceedings would have been different. Second, to establish "prejudice," he must establish that his "underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit."

4

*Clabourne*, 745 F.3d at 377 (citations omitted). The Supreme Court later clarified that *Martinez* may only establish cause and prejudice as to a defaulted claim of ineffective assistance of trial counsel; it does not extend to ineffective assistance of appellate counsel. *Davila v. Davis*, 137 S.Ct. 2058, 2065 (2017).

### b. Challenged Grounds

Dixon acknowledges that the following grounds are procedurally defaulted:

Ground 1: Dixon contends that his trial counsel rendered ineffective assistance by failing to object to prosecutorial misconduct during the opening and closing statements, in violation of his Fifth, Sixth, and Fourteenth Amendment rights. (ECF No. 61, pp. 12-17.)

Ground 2: Dixon asserts that appellate counsel failed to raise an issue regarding prosecutorial misconduct during opening and closing statements, in violation of his Fifth, Sixth and Fourteenth Amendment rights. *Id*. at 17.

Ground 3(A) & (B): Dixon argues that trial counsel failed to pursue a voluntary intoxication defense in violation of his Fifth, Sixth, and Fourteenth Amendment rights. *Id*. at 18-29. Specifically:

(A) Counsel failed to investigate, hire experts to support, and present a voluntary intoxication defense;

(B) Counsel failed to request a jury instruction regarding voluntary intoxication.

Ground 5: Dixon contends that trial counsel failed to challenge the information or the jury instructions regarding attempted murder, in violation of his Fifth, Sixth, and Fourteenth Amendment rights. *Id*. at 33-35.

Ground 6: Dixon urges that the information and jury instructions were flawed, which violated his Fifth, Sixth, and Fourteenth Amendment rights. *Id*. at 35.

Ground 7: Dixon contends that the prosecutor committed misconduct during opening and closing statements, in violation of his Fifth, Sixth, and Fourteenth Amendment rights. *Id*. at 36.

### c. Actual Innocence

Dixon argues that he can overcome the procedural default of these grounds because he is actually innocent. (ECF No. 89, pp. 3-11.) "[A]ctual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar [or] expiration of the statute of limitations." *McQuiggin v Perkins*, 569 U.S. 383, 386 (2013). In this regard, "actual innocence" means actual factual innocence, not mere legal insufficiency. *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992). "[W]here post-conviction evidence casts doubt on the conviction by undercutting the reliability of the proof of guilt, but not by affirmatively proving innocence, that can be enough to pass through the *Schlup* gateway to allow consideration of otherwise barred claims." *Lee v. Lampert*, 653 F.3d 929, 938 (9th Cir. 2011). However, the Supreme Court has emphasized that "tenable actual-innocence gateway pleas are rare: '[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" *McQuiggin*, 569 U.S. at 386 (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)). "To be credible, [an actual-innocence] claim requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324. To be "new" for purposes of an actual-innocence claim, the evidence need only be "newly presented," *i.e.*, reliable evidence "that was not presented at trial," as opposed to "newly discovered" and thus previously unavailable. *Griffin v. Johnson*, 350 F.3d 956, 961-63 (9th Cir. 2003). Actual-innocence review incorporates "all evidence," including (i) evidence alleged to have been improperly admitted (but with due regard to its questionable reliability), (ii) evidence tenably claimed to have been wrongfully excluded by the trial court, (iii) evidence the defense did not present to the jury at trial, or (iv) evidence that became available only after the trial. *Id*. (citing *Schlup*, 513 U.S. at 327-28). Newly

presented evidence may call into question the credibility of trial witnesses, potentially requiring credibility assessments on federal habeas review. *Schlup*, 513 U.S. at 330; *Stewart v. Cate*, 757 F.3d 929, 941 (9th Cir. 2014). However, a *Schlup* claim attempting to discredit prosecution witnesses provides less support for actual innocence than affirmatively presenting new exculpatory evidence. *E.g.*, *Lee*, 653 F.3d at 943-45 (holding that a reasonable juror may have rejected an expert's speculation and, even assuming a police report constituted new evidence, jurors may still have convicted Lee given all they heard at trial); *Sistrunk v. Armenakis*, 292 F.3d 669, 675-76 (9th Cir. 2002) (en banc) (finding that excluded evidence had "some impeachment value" but was "far from conclusive" and thus did not undermine confidence in the conviction).

Dixon argues that the State had to prove that he specifically intended to kill the victims. (ECF No. 89, p. 4.) He insists that he did not specifically intend to kill anyone when he fired the shots but was in a cocaine-induced psychosis. He contends that he is, therefore, innocent of attempted murder.

i. **Evidence of intoxication/incapacitation presented at trial**

Dixon describes the evidence at trial that he was severely under the influence of drugs and alcohol at the time of the shootout. Dixon points to a statement to police by his mother, Elizabeth Redding, where she says that Dixon was up all night smoking crack-cocaine, they both had been drinking, and they started arguing. (ECF No. 85-1, exh. 1 to Dixon's state postconviction petition.) Dixon pulled a gun; Redding had never seen a gun in her apartment. He held it to his head. She called the police; when they arrived, he yelled to them that his mother was coming out of the apartment and not to harm her.

Redding also testified at trial that Dixon had been up all of the previous night smoking crack-cocaine and had taken methamphetamine and other drugs and had been drinking alcohol. (Exh. 34, pp. 115-165.) Redding characterized him as "speeding,"—i.e., he couldn't keep still because he was high. They got into an

argument, and Dixon brandished a gun, stating that he wanted to kill himself. Redding called the police and told them that her son said, "that he wasn't going out like this, that he would take someone with him." *Id*. at 134. Redding said that Dixon had attempted suicide twice before.

**ii. Dixon presented two expert reports in his second state postconviction proceedings**

Forensic scientist George Schiro consulted in connection with Dixon's second petition for state postconviction review. (ECF No 82-5, exh. 1, pp. 20-25.) Schiro opined that it was unlikely that Dixon could see any of the police officers in question from where he was shooting. The officers had all taken cover in various areas of the parking lot, including behind a fence and under the parking lot cover. Schiro stated that the officers may not have been intentionally targeted because there likely was no clear line of sight. One officer was struck by a bullet that passed through a fence and a utility box. Schiro believed it unlikely that Dixon intentionally targeted that officer. Several shots struck the ground short of where two officers were positioned; Schiro opined that it was unlikely that Dixon could see them because they were hiding behind a car and a parking lot cover. Schiro said the wide area of Dixon's gunfire suggested he was blindly firing a random volley, not targeting individuals. He also observed that some of the officers were in cross-fire positions and might have mistaken their own shots or ricochets for Dixon's.

Dixon also argued that the police response exacerbated the situation. (ECF No. 89, p. 9.) Dr. Thomas Streed, an expert on police procedures, produced a report concluding that responding officers did not follow best practices and made a precarious situation worse. (ECF No. 82-5, exh. 4, pp. 34-82.) Streed pointed out that officers were informed by 911 calls and other information that Dixon was under the influence of drugs and alcohol, was potentially suicidal, and had mental health issues. In his view, reasonable officers should have attempted to de-escalate the situation, but instead they

immediately pointed guns at Dixon, tried to kick in his apartment door, and engaged in a shootout.

### iii. Nevada Court of Appeals decision

Dixon argued that he could overcome the procedural bars of his untimely and successive second state postconviction petition because he is actually innocent. The Nevada Court of Appeals considered the two reports discussed above and held that Dixon failed to demonstrate actual innocence and that his claim, at most, was one of legal innocence:

> Dixon claimed he has an expert who will state Dixon lacked the intent to kill the officers because he could not see them. Dixon failed to demonstrate actual innocence because he failed to show "it is more likely than not that no reasonable juror would have convicted him in light of . . new evidence." *Calderon v. Thompson*, 523 U.S. 538, 559 (1998) (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)); *see also Pellegrini v. State*, 117 Nev. 860, 887, 34 P.3d 519, 537 (2001); *Mazzan v. Warden*, 112 Nev. 838, 842, 921 P.2d 920, 922 (1996). Dixon failed to demonstrate the expert could negate his intent because while he may not have been able to see the officers, he knew where they were located based on the trajectory of his shots and he continued to shoot in their general direction. Further, Dixon's claim involved legal innocence rather than factual innocence. *See Calderon*, 523 U.S. at 559; *see also Pellegrini*, 117 Nev. at 887, 34 P.3d at 537 (to demonstrate a fundamental miscarriage of justice, a petitioner must make a colorable showing of actual innocence—factual innocence, not legal innocence).

Exh. 2, pp. 3-4.

### iv. Dixon presented a third expert report in his third state postconviction proceedings

Dixon includes a February 2019 opinion by pharmacology professor Edward D. French that he presented to the state courts in his third state postconviction proceedings. (ECF No. 85-1, exh. 8, pp. 178-190.) Dr. French reported that Dixon had a "binge use" pattern of being continuously intoxicated on cocaine and alcohol and that binge use can lead to "severe psychological derangements such as paranoia and hallucinations that can trigger aggressive and violent behavior." *Id*. at 181. Dixon had been binging for a couple of days leading up to the police confrontation. He told Dr.

9

French during their interview that he had no intent to harm or kill officers that day. Dr. French concluded that Dixon was in a "cocaine psychosis" that rendered him unable to stop or consider the consequences of his behavior toward police. Dixon did not appear to have intended to harm or kill the responding officers, but instead overreacted to a stressful situation during a time when he was unable to control his behavior "or engage in goal-oriented planning." *Id*. at 188.

### v. Nevada Court of Appeals decision

Dixon argued that the state district court erred by denying his third state postconviction petition without conducting an evidentiary hearing on his actual innocence claim. (Exh. 3, pp. 5-6.) Dixon argued that he was actually innocent because his voluntary intoxication prevented him from forming the requisite specific intent to commit the crime of attempted murder. The court rejected this claim because voluntary intoxication is not a complete defense to a crime:

> Next, Dixon claims the district court erred by denying his petition as procedurally barred without first conducting an evidentiary hearing as to his claim of actual innocence. Dixon claimed that it would amount to a fundamental miscarriage of justice if his claims were not heard on the merits because he is actually innocent of the attempted murder of the officers. A petitioner must demonstrate that, considering all of the evidence, "it is more likely than not that no reasonable juror would have convicted him in light of . . . new evidence." *Calderon v. Thompson*, 523 U.S. 538, 559 (1998) (quotation marks omitted); accord *Schlup v. Delo*, 513 U.S. 298, 327 (1995); *see also Pellegrini*, 117 Nev. at 887, 34 P.3d at 537. And to warrant an evidentiary hearing on this issue, a petitioner must "present[ ] specific factual allegations that, if true, and not belied by the record, would show that it is more likely than not that no reasonable juror would have convicted him beyond a reasonable doubt given the new evidence." *Berry*, 131 Nev. at 968, 363 P.3d at 1155. Dixon claimed he is actually innocent based on his voluntary intoxication because it prevented him from forming the necessary specific intent to commit the crime of attempted murder. Dixon claimed he had new evidence to support this claim in the form of a report from an expert witness finding that he was in the midst of a cocaine-induced psychosis during the incident.
>
> Voluntary intoxication is not a complete defense to a crime and may only be taken into consideration concerning purpose, motive, or intent. *See* NRS 193.220. Even assuming the expert's report may have been

helpful to portray a voluntary intoxication defense, it would not have demonstrated actual innocence. The district court found evidence was presented at trial that, when officers attempted to coax Dixon out of his apartment, he shouted, "I'm going to kill you," and then shot at the officers through the door, causing one to drop his gun. Dixon next shot at three separate places outside the apartment building, all of which were where officers had taken cover. Finally, there was a lull in the shooting before Dixon retrieved the gun the officer had dropped near his door and began shooting again. This finding is supported by substantial evidence in the record. Given this evidence, Dixon failed to demonstrate his voluntary intoxication negated his specific intent to kill the officers and that no reasonable juror would have convicted him of attempted murder. Therefore, we conclude the district court did not err by denying this claim without first holding an evidentiary hearing.[FN3]

[FN3: Because we conclude Dixon failed to demonstrate that no reasonable juror would have convicted him in light of new evidence, we decline to reach Dixon's claim that a claim of innocence due to voluntary intoxication is a claim of factual versus legal innocence.]

*Id*.

### vi. Dixon fails to demonstrate actual innocence

Dixon relies on his mother's testimony about his heavy drug and alcohol use leading up to the shootout, his mental health, and his threats to kill himself, and three expert reports to argue that he is actually innocent of the specific intent to commit murder. First, the jury heard his mother's testimony and still found that he intended to commit murder. Next, Streed's report concludes that the police response unnecessarily escalated the incident; this has no bearing on whether Dixon specifically intended to kill the officers. With respect to forensics, Schiro speculates on Dixon's intentions based on his interpretation of the pattern of Dixon's firing and what he estimated that Dixon could see from the apartment window. Dr. French's pharmacology report, completed a dozen years after the shooting, merely augments the evidence presented at trial that Dixon was extremely intoxicated. Notably, the state court of appeals held that, even assuming the report was helpful for Dixon, voluntary intoxication is not a complete defense. Dixon's "new" evidence does not demonstrate factual innocence. Dixon does not proffer exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence. *Schlup*, 513 U.S. at 865. Nothing presented here constitutes the type of new,

11

reliable evidence contemplated by *Schlup*. Assessing "'how reasonable jurors would react to the overall, newly supplemented record,'" *Lee*, 653 F.3d at 944, quoting *House*, 547 U.S. at 538, this court cannot conclude that "it is more likely than not that no reasonable juror would have convicted [Dixon]." *Lee*, 653 F.3d at 944, quoting *Schlup*, 513 U.S. at 327. Dixon has not demonstrated actual innocence that would allow him to use the *Schlup* gateway to excuse the procedural default of several of his claims.

### d. *Martinez* and Procedural Default

Dixon additionally argues that under *Martinez* he can overcome the default of his claims of ineffective assistance of trial counsel. Dixon lacked counsel during his state postconviction petition, which both parties acknowledge provides cause under *Martinez*. However, as Dixon appears to concede, *Martinez* cannot provide cause as to claims for relief other than those of ineffective assistance of trial counsel. (ECF No. 90 at 4.) Grounds 2, 6, and 7 are not claims of ineffective assistance of trial counsel. Accordingly, as Dixon has not demonstrated actual innocence to excuse the default of these claims, they are dismissed as procedurally barred from federal review.

Next, the parties agree that the second part of the *Martinez* inquiry—whether the ineffective assistance of trial claim is substantial—is closely intertwined with the merits of each claim. The parties request that the court defer the analysis of prejudice arising from grounds 1, 3(A), 3(B), and 5 to the adjudication of the merits of the petition. The court agrees that this course best serves judicial efficiency. A decision regarding prejudice and those grounds is deferred to the merits disposition. The parties may further address such prejudice in the answer to the petition and the reply.

### III.     Motion for Evidentiary Hearing

Finally, Dixon argued that the court should grant an evidentiary hearing if it cannot determine whether the grounds at issue are procedurally defaulted from the current record. (ECF No. 90.) But this court has concluded from the record that Dixon has failed to demonstrate actual innocence. *See* Section II.c.vi., above. As discussed,

12

the Nevada Court of Appeals specifically held that voluntary intoxication is not a complete defense to attempted murder. (Exh. 3, p. 6.) The Nevada Court of Appeals' interpretation of state law is binding on federal courts. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005). "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623-24 (1998), citing *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992). None of the proffered reports support factual innocence. The court denies an evidentiary hearing on actual innocence.

Dixon also seeks an evidentiary hearing with respect to cause and prejudice under *Martinez* to excuse the default of the ineffective assistance of counsel claims. Respondents insist that Dixon is not entitled to such a hearing and/or that any such hearing is premature. (ECF No. 106.) The parties agree that this issue overlaps with the merits of the underlying ineffective assistance claims. (ECF Nos. 90, 106.) The court denies the motion for evidentiary hearing on *Martinez* without prejudice to Dixon re-asserting any request for hearing in the context of the answer to the petition and reply. *See* II.d.

### IV. Conclusion

**IT IS THEREFORE ORDERED** that respondents' motion to dismiss (ECF No. 71) is **GRANTED** in part as follows:

Grounds 2, 6, and 7 are **DISMISSED** as procedurally barred from federal review.

A decision on whether grounds 1, 3(A), 3(B), and 5 are procedurally defaulted is **DEFERRED**.

**IT IS FURTHER ORDERED** that petitioner's motion for hearing before district judge (ECF No. 90) is **DENIED** without prejudice as set forth in this order.

**IT IS FURTHER ORDERED** that respondents have **60 days** from the date this order is entered to file an answer to the remaining claims in the second-amended petition.

**IT IS FURTHER ORDERED** that petitioner has **30 days** from the date that the answer is filed to file a reply in support of his petition.

DATED: 6 September 2022.

_____
ROBERT C. JONES
UNITED STATES DISTRICT JUDGE