UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| TERRY D. DIXON, | Case No. 3:13-cv-00248-RCJ-CSD |
|---|---|
| Petitioner | **Order Denying Motion for Reconsideration of Order Denying Discovery and Denying Motion for Evidentiary Hearing** |
| v. | |
| RENEE BAKER, *et al.*, | (ECF Nos. 125, 126) |
| Respondents | |

In this habeas proceeding under 28 U.S.C. § 2254, petitioner, Terry D. Dixon, has filed a motion for reconsideration of the order denying his motion for discovery and a motion for evidentiary hearing. (ECF Nos. 125, 126.) Both motions are fully briefed. (ECF Nos. 128, 129, 130, 131.) As discussed below, the court denies both motions.

**I.      Background**

A jury convicted Dixon of four counts of attempted murder, resisting a police officer, several counts related to discharging a firearm, and being an ex-felon in possession. (Exhs. 47, 48.)[1] The convictions arose from an incident where Dixon, allegedly in a drug and alcohol-fueled

---

[1] Exhibits referenced in this order are exhibits to respondents' response to the motion for discovery, ECF No. 65, and respondents' motion to dismiss, ECF No. 71, and are found at ECF Nos. 66, 72-87.

psychosis, pulled a gun on his mother in their apartment. (ECF No. 61, pp. 4-6.) She called the police. Two responding officers heard shots fired from inside the apartment. When they could not kick down the door, the officers turned to go downstairs. Some shots came from behind the closed door; one hit one officer and caused him to accidently fire his own gun, hitting the other officer. Ultimately about 300 police officers responded and surrounded the building. Dixon was firing out of the apartment window; six officers were in the close line of fire, and one was wounded.

The state district court sentenced Dixon to four consecutive terms of life without the possibility of parole for the attempted murder charges and additional terms of years for the other counts. (Exh. 52.) Dixon was acquitted of one count of attempted murder for the officer who was hit through the door. Judgment of conviction was filed on April 7, 2009. *Id*.

The Nevada Supreme Court affirmed Dixon's convictions in March 2011 and affirmed the denial of his first state postconviction habeas corpus petition in April 2013. (Exhs. 81, 1.) Dixon then dispatched his original federal petition for mailing in May 2013. (ECF No. 5.) In July 2014, this court dismissed his amended petition without prejudice under prevailing law at the time for failure to exhaust certain claims. (ECF No. 19.) The court also denied Dixon's motion for stay and abeyance in that order. Judgment was entered. (ECF No. 20.)

Dixon filed a notice of appeal, and the Ninth Circuit Court of Appeals appointed counsel. (*See* ECF Nos. 21, 30.) In February 2017, the court of appeals reversed and remanded with instructions that this court grant Dixon's motion for a stay and abeyance while he pursues his unexhausted claims in state court. (*See* ECF Nos. 34, 39.)

The Nevada Court of Appeals then affirmed the denial of his second state postconviction petition in May 2017. (Exh. 2.) In September 2020, the state appeals court affirmed the denial of Dixon's third state postconviction petition. (Exh. 3.)

This court granted Dixon's motion to reopen his federal petition, filed through counsel, the Federal Public Defender, in January 2021. (ECF Nos. 54, 56.) Dixon filed a second-amended petition and a motion for discovery. (ECF Nos. 61, 62.) The court denied the motion for discovery. (ECF No. 100.) The court subsequently granted respondents' motion to dismiss in part, dismissing three grounds as procedurally barred and deferring a decision regarding procedural default on Grounds 1, 3(A), 3(B) and 5. (ECF No. 110.) The following claims remain before the court:

> Ground 1: Trial counsel was ineffective for failing to object to misconduct during the prosecution's opening and closing statements.
>
> Ground 3(A): Trial counsel failed to hire experts and investigate and pursue a voluntary intoxication defense.
>
> Ground 3(B): Trial counsel failed to present a jury instruction on voluntary intoxication.
>
> Ground 4: Trial counsel failed to hire experts, conduct a crime scene investigation, and obtain photographs from inside the apartment.
>
> Ground 5: Trial counsel failed to challenge the information or jury instructions regarding attempted murder.
>
> Ground 8: Dixon's constitutional rights were violated because the jury venire was under-representative of minorities.

(ECF No. 61.)

**II.    Motions**

    **a.  Reconsideration of Order Denying Discovery**

Dixon moves for reconsideration of this court's order denying discovery. (ECF No. 126.) The court has the inherent power to reconsider interlocutory orders for cause; however, motions

3

for reconsideration are disfavored. (LR 59-1.) Courts should only reconsider prior orders in extraordinary circumstances such as where the initial decision was "'clearly erroneous and would work a manifest injustice.'" *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988) (quoting *Arizona v. California*, 460 U.S. 605, 618 n. 8 (1983)).

Reconsideration of prior court rulings is generally reserved for instances where the court changes its position (1) based on the discovery of new evidence, (2) due to a subsequent change in the law, or (3) to correct a clear legal error. *Cf. McDowell v. Calderon*, 197 F.3d 1253, 1255-56 (9th Cir. 1999) (addressing standard for a motion for reconsideration under FRCP 59). The movant must not repeat previously presented arguments unless it is necessary to explain controlling, intervening law or to argue a new fact. (LR 59-1(b)).

Dixon had requested discovery so that he could obtain photographs from the apartment bedroom window from which he fired the shots. (ECF No. 62.) Dixon sought this discovery to support ground 4(B) of his petition—his claim that trial counsel failed to hire relevant experts and conduct investigation regarding the crime scene, and specifically that trial counsel failed to take photographs from the windows in Dixon's apartment. This court denied the motion:

> As the court's analysis is limited to whether the Nevada Supreme Court reasonably assessed Dixon's claim that his counsel was ineffective under 28 U.S.C. § 2254(d)(1), which entails this analysis is limited to the evidence provided to the Nevada Supreme Court under *Pinholster*, additional discovery cannot assist Dixon in developing facts that "demonstrate that he is . . . entitled to relief." *Harris*, 394 U.S. at 300. Using this logic, the Ninth Circuit has held that a § 2254 petitioner is "not entitled to additional discovery in federal court [where] his claim is governed by 28 U.S.C. § 2254(d)(1)." *Runningeagle v. Ryan*, 686 F.3d 758, 773 (9th Cir. 2012) (citing Pinholster, 131 S.Ct. at 1398.). The motion is therefore denied.

(ECF No. 100 at 5.) Dixon now argues that in his reply in support of the second-amended petition he has demonstrated that this court should not defer to the state court because its decision was an unreasonable application of *Strickland* and an unreasonable determination of the

4

facts. (ECF No. 126.) He contends that ground 4(B) is no longer governed by § 2254(d) and should be considered *de novo*, which means the court can also look to new evidence on *de novo* review. *Id.*, citing *Johnson v. Finn*, 665 F.3d 1063, 1069 n.1. (9th Cir. 2011) (distinguishing *Pinholster v. Cullen*, 563 U.S. 170 (2011) and stating that when a state court decision does "not qualify for deference under" 28 U.S.C. § 2254, it may be "lawful and necessary" to hold an evidentiary hearing to resolve factual "issues that the state court (as a result of its erroneous analysis) failed to reach").

Arguing the merits of ground 4(B) does not demonstrate why the court should change its ruling. That is, Dixon does not address the standard for reconsideration: that there is new evidence, a change in the law, or a clear legal error. Thus the court declines to revisit its ruling on the motion for discovery.

### b. Evidentiary Hearing

Dixon maintains that the court can resolve his remaining claims without an evidentiary hearing but states that, if the court cannot rule in Dixon's favor on the current record, it should hold an evidentiary hearing so that he can present additional evidence to support his claims. According to Dixon, the evidence will demonstrate that his default of the ineffective assistance of trial counsel claims should be excused under *Martinez v. Ryan*, 566 U.S. 1 (2012), and that the claims warrant habeas relief. Additionally, he asks for further factual development of his claim that the jury venire was under-representative of minorities.

The availability of evidentiary hearings in habeas cases is limited by 28 U.S.C. § 2254(e)(2). Section 2254(e)(2) provides that, if a prisoner "has failed to develop the factual basis of a claim in State court proceedings," a federal court may hold "an evidentiary hearing on

the claim" in only two circumstances, neither of which apply to in this case.[2] In *Shinn v. Ramirez*, 596 U.S. 366, 387 (2022), the Supreme Court held that the equitable rule announced in *Martinez* does not permit a federal court to dispense with the limits imposed by 28 U.S.C. § 2254(e)(2) "because a prisoner's state postconviction counsel negligently failed to develop the state-court record." *Ramirez*, 596 U.S. at 371. Thus, this court cannot hold an evidentiary hearing if Dixon was "at fault" or "bears responsibility" for the undeveloped state record. *Id.* at 382.

Dixon argues that § 2254(e)(2) does not foreclose an evidentiary hearing before this court because he did not fail to develop the factual basis of his claims in the Nevada courts. He points out that he requested appointment of counsel and an evidentiary hearing in his initial state habeas proceedings, but the state district court denied both requests. (Exhs. 90, 96, 99.)  He argues, therefore, that he cannot be considered at fault for failing to develop the record.

He presented the ineffective assistance of trial counsel claims—grounds 1, 3(A), 3(B), 4, and 5—in his second state postconviction proceeding. The state courts held that Dixon's second state postconviction petition was untimely, successive, and an abuse of the writ. (Exh. 2.) Dixon argued that the fact that he was not appointed counsel in his first state postconviction proceedings provided good cause to overcome the procedural bars to his second state postconviction petition. The Nevada Court of Appeals rejected this argument because the appointment of counsel was not statutorily or constitutionally required. *Id*. at 3. The Nevada Court of Appeals also considered and rejected Dixon's argument that he could overcome the procedural bars because he was actually innocent.

---

[2] The two circumstances are (1) when the claim relies on a "new" and "previously unavailable" "rule of constitutional law" made retroactively applicable by this the Supreme Court or (2) when the claim relies on "a factual predicate that could not have been previously discovered through the exercise of due diligence." §§ 2254(e)(2)(A)(i), (ii).

6

Dixon now specifically asks for an evidentiary hearing relating to grounds 1, 3, 4, 5, and 8. Having considered all the pleadings and exhibits, and even assuming Dixon did not invoke § 2254(e)(2) by failing to develop the state-court record, he has not demonstrated that an evidentiary hearing is warranted.

**Grounds 1 and 5**

In ground 1 Dixon contends that his trial counsel rendered ineffective assistance by failing to object to prosecutorial misconduct during the opening and closing statements. (ECF No. 61, pp. 12-17.) Dixon asserts in ground 5 that trial counsel failed to challenge the information or the jury instructions regarding attempted murder. *Id*. at 33-35.

Dixon states that he would possibly call trial counsel and "additional witnesses." (ECF No. 125 at 8-9.) But he proffers no evidence (such as a declaration or affidavit) showing that counsel's testimony would support his claim. In any event, the determination of deficiency and prejudice and thus the resolution of both of these claims is entirely record-based. Dixon has not demonstrated that he is entitled to an evidentiary hearing on grounds 1 and 5.

**Ground 3**

Dixon alleges in ground 3(A): that trial counsel failed to hire experts and investigate and pursue a voluntary intoxication defense; and 3(B): that trial counsel failed to present a jury instruction on voluntary intoxication. (ECF No. 61 at 18-29.) He asserts that he would consider calling his trial counsel to testify. (ECF No. 125 at 6.) Again he proffers no evidence showing that trial counsel's testimony would support his claim.

He also would consider calling Dr. French and Dr. Streed regarding their reports. Edward D. French prepared a pharmacology report that Dixon presented to the state courts in his third state postconviction proceedings. (ECF No. 85-1, Exh. 8, pp. 178-190.) Dr. French reported that

7

Dixon had a "binge use" pattern of being continuously intoxicated on cocaine and alcohol and that binge use can lead to "severe psychological derangements such as paranoia and hallucinations that can trigger aggressive and violent behavior." *Id*. at 181. Dr. French concluded that Dixon was in a "cocaine psychosis" that rendered him unable to stop or consider the consequences of his behavior toward police. *Id*. at 188. But this court already considered Dr. French's report and observed that the report, "completed a dozen years after the shooting, merely augments the evidence presented at trial that Dixon was extremely intoxicated." (ECF No. 110 at 11.)

Dr. Thomas Streed, an expert on police procedures, produced a report that was presented with Dixon's second state postconviction petition that concluded that responding officers did not follow best practices and made a precarious situation worse. (ECF No. 82-5, Exh. 4, pp. 34-82.) Streed pointed out that officers were informed by 911 calls and other information that Dixon was under the influence of drugs and alcohol, was potentially suicidal, and had mental health issues. Be that as it may, whether police unnecessarily escalated the incident sheds no light on whether Dixon specifically intended to kill the officers. (*See* ECF No. 110 at 11.) Testimony by Dr. French and Dr. Streed regarding their reports is wholly unnecessary; it would not demonstrate that trial counsel was deficient or that Dixon suffered prejudice.

**Ground 4**

Dixon contends that trial counsel failed to hire experts, conduct a crime scene investigation, and obtain photographs from inside the apartment. (ECF No. 61 at 29-33.) He alleges that photographs that showed the apartment window from Dixon's viewpoint would have shown that he could not see the officers, and therefore, was not targeting them and lacked specific intent for murder.

In the State's opposition to Dixon's pro se first state postconviction petition, it outlined how trial counsel presented the defense that Dixon could not see the police officers through the testimony of those officers at trial. (Exh. 92 at 12-14.) Specifically, defense counsel elicited testimony on cross examination from Officer Nevin Hansbarger who was hiding behind the water box that was behind a fence. (Exh. 36 at 171-216.) The officer agreed that he was concealed behind the box and stated that he could not see through the fence. Hansbarger also testified that he had no indication that Dixon was directing gunfire at him. Defense counsel argued in closing that while about 200 pictures from the scene were admitted at trial, no photos were taken or presented that showed Dixon's view from apartment window. (Exh. 45 at 48-50.) Counsel urged that no evidence was presented that Dixon had a direct line of sight and that, therefore, he could not have intended to shoot the officers.

In denying the first petition, the state district court explained that Dixon raised nine claims and that the State responded with specificity to each claim. (Exh. 96.) The court held that trial counsel must be permitted leeway on strategic decisions and that each claim of ineffective assistance of trial counsel was belied by the record. The court thus concluded that Dixon was not entitled to an evidentiary hearing or counsel. (Exhs. 96, 99.) Affirming the denial of the petition, the Nevada Supreme Court held that Dixon failed to demonstrate a reasonable probability of a different outcome had counsel independently obtained photographs given the strength of the evidence of his guilt. (Exh. 1.) This court remains of the view that this claim was reviewed on the merits and is governed by 28 U.S.C. § 2254(d)(1); therefore its analysis is limited to the evidence provided to the Nevada Supreme Court. *Pinholster*, 563 U.S. 170. (*See* Order Denying Motion for Discovery, ECF No. 100 at 5.)

**Ground 8**

Dixon asserts that the jury venire was under-representative of minorities. (ECF No. 61 at 36-39.) He raised this claim on direct appeal. (Exh. 73 at 27-31.) The Nevada Supreme Court rejected the claim, holding that Dixon's arguments at trial indicated that he could not show a systematic exclusion of that group. (Exh. 81 at 4-5.) This claim was adjudicated on the merits. As the court's analysis is limited to whether the Nevada Supreme Court reasonably assessed Dixon's claims about the jury venire and that his counsel was ineffective under 28 U.S.C. § 2254(d)(1), it is limited under *Pinholster* to the evidence provided to the Nevada Supreme Court. *See also Runningeagle v. Ryan*, 686 F.3d 758, 773 (9th Cir. 2012) (citing *Pinholster*, 563 U.S. 181.)

The court accordingly holds that Dixon has not demonstrated that he is entitled to an evidentiary hearing, and the motion is denied. The remaining claims in the second-amended petition have been briefed, and the court will issue a merits determination in due course.

### III. Conclusion

IT IS THEREFORE ORDERED that petitioner's motion for hearing **(ECF No. 125) is DENIED** as set forth in this order.

IT IS FURTHER ORDERED that petitioner's motion for reconsideration of order denying discovery **(ECF No. 126) is DENIED** as set forth in this order.

DATED this 4th day of March 2024.

ROBERT C. JONES
UNITED STATES DISTRICT JUDGE